Okay, Counsel, you can begin. Thank you, Justice Okuda. Good morning, and may it please the Court, I trust that you can see me and hear me okay in this Zoom format, and thank you for allowing me to appear remotely. This is a due process appeal in a Fair Employment and Housing Act case. Basically, what we have here is a case where we were trying to enforce the provisions of the Fair Employment and Housing Act, which is to stamp out discrimination in the workplace. The trial court interfered with our efforts by blocking plaintiff's request to bring in these MeToo witnesses, and simply put, the trial court unfairly blocked the appellant from being able to prove her case. And as you know from our briefs, there's three issues. There's the blanket exclusion of the MeToo evidence, there is the unreasonable three and a half hour time limit to present the case, and then there's the court's inexplicable changes to the verdict form. Only things I'd like to say today. Counsel, one of the problems I have with the record here is, I guess, flowing from the district court's observation that neither side did any pretrial practice whatsoever when the case was called for trial setting. And we don't even have in the record any kind of a proffer as to what these two witnesses were expected to testify to. Now, apparently the parties knew, and the district court knew, perhaps because it received it separately in an email. I don't know, but is there any evidence in the record as to what these witnesses were going to say? The record is thin, Your Honor. Justice, tell me you're correct, the record was thin. There's the other case that was filed by the MeToo witnesses, Valerie Martinez and Teresa Svendor. There were more depositions in that case, there was more of a record. Some of the exhibits from that case were here, because the expectation, of course, was that those MeToo witnesses would be allowed to testify. I understand it, but there were no motions in limine filed where this could have been presented on a more fulsome record, and now you're asking us to declare that the district court abused its discretion when I'm having a very difficult time trying to determine on what basis the district court ruled. Well, and I understand, in the motion in limine, one would expect would have been brought by Equinox to keep us from introducing that evidence. We did brief, in our trial brief, the testimony that would have been provided by Svendor and Martinez. They worked in a different club, but it was the exact same fact pattern. And so the result or the request we have here today is that this court issued the same ruling that the Ninth Circuit issued two years ago in Pineda v. Abbott Laboratories. In that case, now that was at the summary judgment level, but the Ninth Circuit, it was Justices Berzon, Collins, and Kasman. The Ninth Circuit ruled that the trial court erred by excluding MeToo evidence, which was very, very similar to what we had in this case. Excuse me, let me just go back to Judge Tolman's question. The district court, which stated what the witnesses were going to say, I mean, that seemed to be the only thing in the record. And they said that the district court found that the witnesses were alleging discrimination in other stores by other people with unrelated facts. And then the district court was concerned they would take a trial within a trial to determine if there was discrimination. And so denied the motion on 403 grounds, which we consider for abuse of discretion. I didn't see anything in the record going the other way that would suggest that this evidence was crucial or important or even relevant to your client's case. So is there evidence in the record that I could look at for that point? Yes, Justice Akito, we believe there is. We believe the evidence is in the form of the briefing. And again, it is thin. There's also the testimony from Marjorie St. Hubert, the appellant who testified as to her experiences with being given the poor performance review and the unattainable goals after she disclosed her disabilities. But that only gives us that only gives us half of the half the loaf of bread that we need. The other half is to compare what what the plaintiff said with what the two putative witnesses would say in order to make a determination as to whether it's relevant and whether it's probative value is outweighed by its prejudicial value. And we can't do that here with just her testimony. Well, there is one remark by the trial court, which which I believe I'm going to have to hang my hat on. The trial court did find your honor that the evidence was that he called it somewhat probative. So the error by the court was insane to me. The evidence is probative, probative. It's somewhat probative. But he did find that it was helpful to the plaintiff. But he excluded it because, as you said, Justice Akita, he said it would take too long. Basically, it would take 12 hours. And so the two main arguments on our appeal and the due process violation here is that we were not given enough time to put on this evidence. Of course, there would have been a better record. But when the court blocked us entirely, you know, he the court blocked us in the first sitting. We didn't even get to the ninth inning where where where the court prematurely ended the game. He just blocked us early on. So we couldn't really put on any evidence other than the plaintiff or husband and one or two other witnesses from Equinox. So are you referring to where the court said it is somewhat probative, much less probative than it is prejudicial and much, much less probative than it is time consuming? Well, again, I'm hanging my hat on his finding that it was OK. OK, I have a question with respect to the jury verdict form. Yes. Why the the. As I understand it, the court did not. The court made a change in the verdict form from what the parties had stipulated to. And the did not.  But while the case shortly after the case went to the jury and before the jury came back, the party saw the change. And yet the record wasn't preserved as to any objection to the change. So why should we consider this plain error when when when there was no objection during the trial? Well, I think that's the key phrase there, Justice Schroeder, that with respect to during the trial, as you pointed out, the change was discovered while the jury was deliberating. We were off the record. And so nobody was in the courtroom. There was no record. And this judge, as you know from the record, moves so quickly that the attorneys, you know, Paul Murphy and his clients, the attorneys in the next trial were were already in the courtroom ready to start their trial. I pointed out on the record either, is it? Well, only that, you know, he he gave us the three and a half hours because he had another trial ready to start. It's like two plans, two planes trying to land on the same runway. And we were ordered to take off because the other plane was coming in right behind us and we would have had a collision. So the record does show that we were very limited. He had another. There was really, you know, we took the verdict. And there is a polling of the eight jurors and we were gone. There was just no time. There was no opportunity. The discovery of the change he made to the verdict was during a time where we weren't on the record. And the FRCP rule cited by by the FLE, you know, it talks about objections on the record. Well, when we're off the record and the case is essentially over, other than when we came in and took the verdict, there was no opportunity. And so, Your Honor, we would argue and we request that because of that plane error, it is just, you know, we already had a stipulated, very simple general verdict form. And the changes made give the appearance of bias. And because there's really no explanation that can be made for why. The change, as I understand it, was it recited the standard of proof, right? That it was the it was the burden of the plaintiff to prove by preponderance of the evidence. Was that the addition? One change. That was one change. But the bigger concern here of bias is that instead of following the wording the parties had agreed to and what is in the case, the instructions where it says, if your answer is yes, go to the damages questions. The court, on its own, without disclosing it to counsel, changed that to if your answer is no, turn in the verdict form. You're done. And it was that changing from an affirmative leaning to a negative leaning was designed to direct the jury to say no. So why is that plane error? So plane error, error, that was plane. There's a case that says you can't do that. And substantial rights affected. Well, and again, the court has the ability to modify the verdict form. We can see we acknowledge that. However, you're looking at this particular verdict form de novo. So even though the first two arguments on the me too and the time limits is an abusive discretion standard. You're looking at the verdict forms de novo. And we would ask you to look at it. I'm not sure that I'm not sure that's right. I think that our case law says that we treat the form of the verdict as if they are jury instructions. And as long as it properly states the law, then we assess by abuse of discretion whether or not the trial court erred in the phrasing of the instruction. And I guess the problem I'm having with your argument is even though you claim there was prejudice in this change in the wording, it didn't misstate the law. The burden of proof that the plaintiff carries is preponderance of the evidence. And if the jury finds that the plaintiff didn't prove its case by preponderance of the evidence, then there's no liability and the jury's work is done. So sign the form and return it. So where's the plain error here? Where's the manifest prejudice that you're arguing? Prejudice is that we have the legislative, through the committees and councils, we have the court-approved instructions, the case instructions. And we have the draft and model verdict forms that follow certain wording and phraseology. And the court, on its own, to change that from saying, if your answer is yes, go to the images. If your answer is no, you reversed it. And all we're asking is under the city of San Diego versus D.R. Horton case, which is in our opening brief, if you couldn't, we believe this court does have a de novo standard review with respect to a judicial interpretation of the verdict. If you take the verdict that the court drafted, and without disclosing to us that he was rejecting it or rejecting what the parties had drafted and came up with his own, if you look at that wording and agree with us that it essentially violates Casey because it doesn't follow Casey. And the irony is the court had expressed concern about verdict forms. He said, let's use a general verdict form because we don't want an appeal. We don't want a dirty verdict form. So there was an awareness of the importance of the verdict form. But yet, without disclosing to the attorneys who had agreed on the wording of a verdict, the court changed it on its own. Well, is your argument, counsel, I want to be clear. Is your argument that the way that it was changed, that the wording that was given to the jury was error? Or is your argument that the fact that you didn't see it, see the change before it went to the jury is the error? Well, it's both. It's the first. The issue of me not seeing it is simply why there's no objection on the record. So the answer to your question. Did you want to save some time for rebuttal? Yes, please. Thank you. Okay. We'll hear from the other side. Good morning. Good morning. Presiding Judge Ikuda, may it please the court, maybe I could take the issues that were raised in reverse order. We quoted a Ninth Circuit case for the standard of review as abusive discretion regarding the verdict form. Quote, we review a district court's formulation of a special verdict form for abuse of discretion. That's United States versus Stinson. The other side admits that they reviewed the verdict form before the jury returned their verdict. There was no objection on the record. My friend on the other side does not claim that he asked to go on the record to make an objection. It doesn't explain why he didn't do that. The statute, Rule 51C, consistent with almost every other area of law, says a party cannot sit on his hands. Once a party, if a party isn't given an opportunity to object on the record and then learns that an instruction or verdict form is given that's objectionable, the party must promptly make an objection. Can't wait and say, well, the jury rules in our favor, we'll take it. If we lose, oh, we get to raise the issue for the first time on appeal. They didn't give the district court any opportunity to correct the alleged error in the verdict form. And I'd be happy to move to the Me Too evidence issue. The U.S. Supreme Court in the Sprint case said the admissibility of Me Too evidence in particular, the district court is almost always, virtually always, in a better position to assess admissibility. Why? Because it's a fact-intensive, context-specific inquiry. And so the very absence of really any fact as to what Svengert and Martinez would have testified to makes it impossible for this court. I would contend to hold that Judge Klausner abused his discretion in excluding the evidence. What we do know is that the other side does not dispute that Svengert and Martinez, the alleged Me Too witnesses, don't complain about anything about Hubert's supervisors, about Hubert's clubs. It was in a different county. They're just different allegations than the claims in this case. And for that reason, this case is fundamentally different from the precedent that the other side relies on. The Eighth Circuit's Estes case, the California Court of Appeals' Pantoja and Johnson cases, the Me Too evidence in those cases went to discrimination by the plaintiff's supervisor, the one who allegedly discriminated against the plaintiff, and therefore the Me Too evidence was relevant to show whether or not the plaintiff's supervisor had discriminatory motives in acting against the plaintiff. We just don't have that in this case. Why didn't you move in limine to exclude these two witnesses when you knew the plaintiff had listed them? We filed a motion pre-trial advising the court that we're going to object if the other side seeks to introduce this Me Too evidence. So we did file a motion on it, and we described what I just said. Is that in the record before us? It is, Your Honor. Supplemental excerpts of record 21 to 25 is the pre-trial corrector, and that's the pre-trial motion that we filed advising the court we're going to object to any attempt to offer Me Too evidence from Svengard and Martinez. Okay. And the reason being, the complaints are against different supervisors than involved in this case. Okay. And then was the court supplied outside the record with some sort of a summary of what the witnesses would testify to? Because the court seemed to have some feel for what these two women would say. Your Honor, I was brought in to handle this appeal. I don't know what's outside the record any more than you do. I apologize. All right. That's okay. All right. That answers my question. I'll be happy to answer any others. Otherwise, I conclude by saying the plaintiff received a fair trial, and the judgment should be affirmed. Okay. We thank you for your argument. You have a minute or a couple of minutes for rebuttal. Thank you, Justice Akita. We would argue the plaintiff received anything but a fair trial. With respect to the law on MeToo evidence, the Johnson case cited in our brief makes very clear that in a feehead discrimination case, if there's evidence of organizational practices showing discrimination permeates the workplace, it doesn't matter if it's not the same supervisor. Here, we actually do have the same HR person, and that's in the record. Her name is Michelle Weidman. She was deposed. She was the HR person in all three of these witnesses. And, again, it's the same fact pattern where when you're hired at Equinox, our clients had the EquiFit appearance. They had the Equinox body. They were good examples for the club members. They did what was expected of them. But then, through no fault of their own, when they developed these medical conditions and disabilities, now all three of them are being performance managed out. And that was a big phrase at this trial, that you're managed out, that that's a organizational practice, where they know if they just fire you, it's obvious discrimination. So they're subtle and they're sophisticated. And what they did is they invented these performance problems, and they issued these unattainable sales goals. And then, in my client's situation, they developed this fraud argument that she had signed up a member twice, and in the face of that, she was forced to resign. And she made clear in her resignation that she felt she was being discriminated against and forced out. So she testified very clearly as to what happened. But the jury obviously needed more. And if we had been given a little more time, we would have put on these two witnesses. And, Justice Tomlin, you're correct. There is a lot that occurred off the record because, as we point out in the briefs, the women were there in the courtroom. The jury saw them. And then we don't know. Did the jury blame us for not putting them on the stand, thinking you have witnesses? You must not have a very good case if you didn't call them. And they showed up to testify. The jury never knew that it was the court that excluded them. So we received anything but a fair trial. Thank you. Thank you. Okay. The case of St. Hubert v. Equinox Holding is submitted, and we're adjourned for this session and for the week. Thank you, Counsel. All rise. This court for this session stands adjourned.
judges: SCHROEDER, TALLMAN, IKUTA